**IN THE UNITED STATES DISTRICT COURT OF**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ENBRIDGE ENERGY, LIMITED** | § | |
| **PARTNERSHIP** | § | |
| | § | |
| **VS.** | § | **C.A. NO.: _____** |
| | § | |
| **IMPERIAL FREIGHT INC. AND** | § | |
| **C.H. ROBINSON WORLDWIDE, INC.** | § | |

<u>**ENBRIDGE ENERGY, L.P.'S ORIGINAL COMPLAINT AND JURY DEMAND**</u>

NOW INTO COURT, through undersigned counsel, comes Plaintiff Enbridge Energy, Limited Partnership ("Enbridge"), and files this Original Complaint against Defendants Imperial Freight Inc. ("Imperial Freight") and C.H. Robinson Worldwide, Inc. ("C.H. Robinson"). Enbridge files this action to recover damages sustained to cargo transported by Defendants from Houston, Texas to Enbridge's warehouse in Niles, Michigan.  In support of this action, Enbridge submits as follows:

<u>**PARTIES**</u>

1.

Plaintiff Enbridge Energy, Limited Partnership ("Enbridge"), is a series limited partnership organized under the laws of Delaware, with its principal place of business in Houston, Texas.  This action is brought on behalf of Series LH of the limited partnership. The general partners of Series LH are Enbridge Pipelines (Lakehead) L.L.C., the Managing General Partner, with its principal place of business in Houston, Texas, and Enbridge Pipelines (Wisconsin) Inc., a General Partner, with its principal place of business in Houston, Texas. The limited partner of Series LH is Enbridge Energy Partners, L.P., which has its principal place of business in Houston, Texas.

2.

Upon information and belief, Defendant Imperial Freight, Inc. ("Imperial Freight") is an Illinois corporation with its principal place of business in Berwyn, Illinois.

3.

Upon information and belief, Defendant C.H. Robinson Worldwide, Inc. ("C.H. Robinson") is a corporation organized under the laws of Delaware with its principal place of business in Eden Prairie, Minnesota.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1337(a), because this action involves the liability of a motor carrier under 49 U.S.C. § 14706, and the amount in controversy exceeds $10,000, exclusive of interest and costs.

5.

In addition, this Court has supplemental jurisdiction over those claims not asserted under 49 U.S.C. § 14706 pursuant to 28 U.S.C. § 1367(a), as they are so related to the claims being asserted under 49 U.S.C. § 14706 that they form part of the same case and controversy.

6.

Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Both Defendants operate in Houston, Texas, and the damaged cargo was picked up by Defendants in Houston, Texas.  Further, the contract pursuant to which Enbridge purchased the cargo was negotiated and executed in Texas, and that contract is governed by the laws of the State of Texas, and Harris County, Texas, is the venue for all disputes thereunder.

## FACTUAL ALLEGATIONS

7.

On June 1, 2012, Enbridge entered into a purchase order contract with Toshiba International Corporation ("Toshiba") in Houston, Texas, pursuant to which it purchased various specialized equipment (the "Toshiba Contract"). *See* Exhibit 1 (Purchase Order Contract dated May 25, 2012). This equipment included two 3,500 horsepower variable frequency drives (the "Drives"), which are large pieces of industrial equipment that control motor speed and torque applied in natural gas compression on natural gas pipelines. The Toshiba Contract included the obligation to ship the Drives and appurtenant equipment, which are of considerable size, to an Enbridge warehouse in Niles, Michigan.

8.

To facilitate shipping the Drives to Michigan, Toshiba contracted with C.H. Robinson, which in turn engaged Imperial Freight to pick up the cargo in Houston and transport it to Michigan.

9.

Imperial Freight picked up the cargo, which was at that time in good order and condition, from Toshiba in Houston. While en route to Michigan, the truck carrying the cargo was involved in an accident at an off-ramp on Interstate 40 in Arkansas. Specifically, the driver exited at too great of a speed to negotiate the curve of the off-ramp, thus causing the truck and trailer to roll over. The driver was cited for careless and prohibited driving.

10.

The passengers of the truck were unharmed. However, the cargo was severely damaged and determined to be beyond economic repair. The total value of the Drives at the time was $643,981.80.

11.

A local wrecker recovered the cargo and towed it to its local storage facility, where the cargo remained until delivered to Enbridge's warehouse facility in Niles, Michigan.  The costs and fees associated with the towing and storage totaled $31,965.36,[1] which Enbridge paid.

12.

 Enbridge timely filed a "Loss and Damage Claim Form" with C.H. Robinson on October 17, 2013, in accordance with 49 C.F.R. § 370.3.  *See* Exhibit 2.  C.H. Robinson acknowledged the receipt of Enbridge's claim on October 21, 2013, advising that it would "begin the claims process with the carrier and their insurance provider."  *See* Exhibit 3.

13.

On December 4, 2013, Imperial Freight's insurance provider issued a letter denying coverage for Enbridge's claim stating that the policy at issue did not cover the Drives.

14.

On March 3, 2014, C.H. Robinson advised Enbridge that Imperial Freight's insurance provider denied Enbridge's claim for damages because: (1) the insurance company claimed that the insurance policy excluded transportation of the type of cargo that was damaged; (2) the carrier is no longer in business nor operating under its DOT authority; and (3) the insurance provider no longer insures Imperial Freight.

15.

To date, Enbridge has suffered approximately $675,947.16 in damages, which includes $643,981.80 for the value of the Drives and $31,965.36 for retrieval of the equipment from the

---

[1] This amount includes $1,592.05, which is the cost of transporting the damaged Drives from Arkansas to Michigan.  The amount was not included in the Loss and Damage Claim Form, because Enbridge incurred this expense subsequent to the filing of the claim.

site of the accident, securing it in a local storage facility, and transporting it to Michigan. Neither Imperial Freight nor C.H. Robinson have reimbursed Enbridge for its losses. Further, Enbridge continues to sustain additional losses.

## CAUSES OF ACTION

### COUNT 1: LIABILITY UNDER 49 U.S.C. § 14706
### AS TO IMPERIAL FREIGHT AND/OR C.H. ROBINSON

16.

Pursuant to 49 U.S.C. § 14706(a)(1), "[a] carrier providing transportation service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . ."  Further, "[t]hat carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property . . . ."

17.

Pursuant to the bill of lading, C.H. Robinson and/or Imperial Freight were contracted to deliver the Drives to Enbridge's warehouse in Niles, Michigan.  Defendants are motor carriers and receiving carriers, delivering carriers, and/or other carriers as set forth in 49 U.S.C. § 14706.

18.

The cargo was provided to Defendants in good order and condition.  The damage to the Drives occurred while in the custody of Defendants and/or entities or persons acting on their behalf.  Moreover, the damages were directly caused by the negligent actions of Defendants and/or entities or persons acting on their behalf.  Therefore, Enbridge is entitled to its actual loss under 49 U.S.C. § 14706 in the amount of $675,947.16.

## COUNT 2: C.H. ROBINSON'S NEGLIGENT HIRING

19.

In the event that C.H. Robinson is determined to be a broker and not liable under 49 U.S.C. § 14706, Enbridge alternatively pleads a cause of action for negligent hiring against C.H. Robinson. A broker is defined as a person, "that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *See* 49 U.S.C. § 13102(2).

20.

If C.H. Robinson acted as a broker and arranged Imperial Freight to carry the Drives, then it had a duty to Enbridge as the consignee of the cargo to select an appropriate and qualified carrier that was insured sufficiently and/or financially secure to cover any damages to the cargo it was carrying. By information and belief, Imperial Freight had only received its authority to operate as an interstate motor carrier less than a month before C.H. Robinson contracted it to haul the Drives. Imperial Freight's lack of experience is highlighted by the fact that Imperial Freight accrued numerous safety violations in 2013, such that its authority as an interstate motor carrier was revoked in November 2013.

21.

In addition, based upon the denial of Enbridge's claim by the insurance provider, Imperial Freight's insurance policy may exclude the Drives as cargo for which Imperial Freight was insured to carry.

22.

In sum, C.H. Robinson failed in its duty to Enbridge by negligently selecting a carrier that was not qualified to safely and securely deliver the Drives to Enbridge and that did not have the financial ability and/or insurance sufficient to compensate Enbridge for the loss of the Drives.  C.H. Robinson's negligence in hiring Imperial Freight was a proximate cause of the damages that Enbridge has suffered.

**COUNT 3: C.H. ROBINSON'S NEGLIGENT MISREPRESENTATION**

23.

Again, in the alternative, if C.H. Robinson is determined to have been acting in the capacity of a broker, Enbridge pleads negligent misrepresentation by C.H. Robinson.

24.

C.H. Robinson contracted with Toshiba to provide a qualified and competent shipper to deliver the Drives to Enbridge in Michigan.  C.H. Robinson represented that Imperial Freight fulfilled the necessary qualifications to safely and securely transport the cargo when in fact Imperial Freight did not have the necessary experience and does not have the financial wherewithal and/or sufficient insurance coverage to compensate Enbridge for the damage to its property.  Both Enbridge and Toshiba reasonably relied on C.H. Robinson's representations.

25.

C.H. Robinson failed to exercise reasonable care in investigating Imperial Freight in order to determine whether it was a qualified and competent carrier and that it could compensate Enbridge for any damages that may occur during the transport of the Drives.

26.

Due to C.H. Robinson's negligence, Enbridge has suffered significant damages, and neither Imperial Freight, nor C.H. Robinson have compensated Enbridge.

## COUNT 4: C.H. ROBINSON'S BREACH OF CONTRACT

27.

Enbridge contracted with Toshiba to not only manufacture the Drives but to also safely deliver the Drives to the Enbridge warehouse in Michigan in good working order and condition.

28.

Toshiba then contracted with C.H. Robinson to fulfill the obligation to Enbridge to transport the Drives to Michigan.  Upon information and belief, the Toshiba/C.H. Robinson Contract was intended to secure a benefit for Enbridge and did secure a direct benefit for Enbridge, namely the fulfillment of the delivery obligation contained in the Toshiba Contract.

29.

C.H. Robinson breached this contract, failing to have the cargo delivered in good working order and condition to Enbridge's warehouse.

30.

Due to C.H. Robinson's breach, Enbridge has suffered significant damages.

## COUNT 5: C.H. ROBINSON'S BREACH OF FIDUCIARY DUTY

31.

Further, Toshiba contracted with C.H. Robinson to have the Drives safely delivered to an Enbridge warehouse in Michigan in good working order and condition.  In entering this agreement with Toshiba, C.H. Robinson had a fiduciary duty to Enbridge, as cosignee of the shipment and third party beneficiary to the contract between Toshiba and C.H. Robinson.

32.

At all times from the pickup of the Drives, during transport, and even after the destruction of the Drives, C.H. Robinson acted or attempted to act as agent for Enbridge.

33.

C.H. Robinson breached its fiduciary duty to Enbridge resulting in significant damages suffered by Enbridge.

### COUNT 6: ATTORNEY'S FEES

34.

Enbridge has made or will make reasonable and prompt demand upon Defendants to reimburse the cost and fees associated with shipping the Drives and for its attorney's fees incurred in obtaining these damages.  Defendants have failed to make payment to Enbridge.  In accordance with §38.001 of the Texas Civil Practice and Remedies Code, Enbridge seeks an award of the attorney's fees it has already incurred and may incur in bringing this suit.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Enbridge Energy, Limited Partnership prays for judgment in its favor and against Defendants Imperial Freight Inc. and C.H. Robinson Worldwide, Inc. as follows:

(1)     finding them jointly and severally liable for the damages sustained by Enbridge in the amount of $675,947.16;

(2)     attorney's fees incurred in bringing this action; and

(3)     granting all losses, damages, applicable penalties, attorney's fees, costs, prejudgment and post judgment interest, and all other general and equitable relief to which Enbridge may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Enbridge demands trial by jury in this action of all issues so triable.

Dated:  September 10, 2014

Respectfully submitted,

**JONES WALKER LLP**

Joshua A. Norris (TX Bar No. 24027577)
Federal ID No. 574936
Amy L. Vazquez (TX Bar No. 24037637)
Federal ID No. 571728
Brett R. Sheneman (TX Bar No. 24075067)
Federal ID No. 2364244
1001 Fannin, Suite 2450
Houston, Texas 77002
Telephone:  713/437-1800
Facsimile:  713/437-1810
Email:  jnorris@joneswalker.com
Email:  avazquez@joneswalker.com
Email:  bsheneman@joneswalker.com

*Attorneys for Plaintiff,*
*Enbridge Energy, Limited Partnership*