United States District Court
Southern District of Texas
**ENTERED**
April 25, 2019
David J. Bradley, Clerk

| | |
|---|---|
| Enbridge Energy, LP, § § Plaintiff, § § versus § § Imperial Freight Inc., et al., § § Defendants. § | Civil Action H-14-2615 |

## Opinion on Summary Judgment

1. *Background.*

Enbridge Energy, LP, bought equipment from Toshiba International Corporation in 2012, including two 3,500 horsepower variable frequency drives used to control motor speed and torque applied in natural gas compression for pipelines. Under the contract between Enbridge and Toshiba, Toshiba was obliged to ship the drives and equipment to an Enbridge warehouse in Michigan.

Toshiba had contracted with C.H. Robinson in 2011 for Robinson to be its freight broker. Under this agreement, Toshiba engaged Robinson to hire a trucking company to haul the drives. Robinson retained Imperial Freight Inc. to retrieve the cargo from Toshiba in Houston, load it, and carry it to Michigan. While en route to Michigan, Imperial Freight's driver left the highway so fast that the truck overturned on the off-ramp in Arkansas. The driver was cited for careless and prohibited driving and the drives were damaged beyond economic repair. The total value of the drives at that time was $643,981.80. It cost Enbridge $31,965.36 to tow it to a storage facility and store it until it could be delivered to the warehouse in Michigan, so Enbridge lost $675,947.16.

Enbridge timely filed a loss and damage claim form with Robinson on October 17, 2013. Robinson acknowledged receipt of the claim four days later and advised that it would begin the claims process with the carrier and its insurer. In December 2013, Imperial Freight's insurer denied coverage for Enbridge's claim because the policy did not cover the drives. Enbridge then filed this lawsuit.

2. *Liability Under 49 U.S.C. § 14706.*

Robinson can only be liable to Enbridge under the Carmack Amendment if it is a motor carrier – rather than an independent broker. The Carmack Amendment does not govern the role of brokers with respect to interstate cargo losses and damages.[1] A broker is not liable for the negligence of its independent contractor trucking company or the driver hired and supervised by that company.[2]

Unlike a motor carrier, Robinson does not own or operate trucks or employ drivers. Instead, Robinson connects companies who need to ship goods with other, unrelated trucking companies qualified to haul those goods as independent contractors. That is the function of a broker.

Robinson located an independent motor carrier – Imperial Freight – and negotiated with it for the shipper. The only direction it gave to Imperial Freight was general instructions on the load, including its origin and destination. Further, the express terms of Robinson's contract with Imperial Freight made Imperial Freight a contractor separate and apart from Robinson as the broker that arranged for the shipment.

Robinson fits squarely within the definition of a broker.[3] It was not a motor carrier. Accordingly, it is not liable to Enbridge under 49 U.S.C. § 14706.

3. *Preemption.*

The Federal Aviation Administration Authorization Act preempts state regulation of the trucking industry, including state-law private claims. It precludes states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier [or] *broker* ... with respect to the transportation of property."[4] The FAAAA preempts common-law

---

[1] *See, e.g., Harang v. Delta Moving Servs., LTD.*, No. CIV.A. H-10-1953, 2011 WL 1103650, at *3 (S.D. Tex. Mar. 23, 2011).

[2] *See Dragna v. KLLM Transp. Servs., L.L.C.*, 638 F. App'x 314, 316 (5th Cir. 2016).

[3] A broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

[4] 49 U.S.C. § 14501(c)(1) (emphasis added).

negligent hiring claims against freight brokers.[5] The claim that a broker failed to verify adequate insurance coverage of cargo also falls within the FAAAA and is, therefore, preempted by it.[6]

The FAAAA preempts Enbridge's state law claims against Robinson. As discussed below, even if they were not preempted, they would still fail.

4. *Negligent Hiring.*

In bringing its negligent hiring claim, Enbridge alleges that Robinson failed to select a qualified carrier sufficiently insured to compensate Enbridge for the loss of the drives. Robinson acted as a reasonably prudent broker in selecting Imperial Freight.

To bring a successful negligent hiring claim, Enbridge must show that (a) Robinson breached a legal duty to protect Enbridge from the actions of its independent contractors and (b) Enbridge sustained damages proximately caused by Robinson's breach.

*A. No Breach.*

The record shows that Imperial Freight was a qualified, federally-licensed motor carrier, and Robinson had no reason to believe anything to the contrary. Robinson confirms that each motor carrier it works with is both insured and qualified under the FMCSR. For Robinson to approve a motor carrier, the carrier must give Robinson a copy of its federal motor safety rating, evidence of its federal operating authority, and proof of insurance. Robinson then verifies that information with the FMCSR databases and requires the carrier to sign an agreement for motor contract carrier services. Robinson checks the carrier's continued compliance with the FMCSR through a third-party contractor that vets each motor carrier through governmental databases and updates the carriers' federal motor carrier status daily.

---

[5] *See, e.g., Alpine Fresh v. Jala Trucking,* 181 F. Supp. 3d 250, 253 (D.N.J. 2016) (dismissing the common law negligent hiring claim against the broker after finding that the FAAAA expressly prohibited state regulation of "interstate services of any ... broker" and that the language "related to a price, route or service of any ... broker" precluded the negligent hiring claim); *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.,* 888 F. Supp. 2d 197, 201 (D.N.H. 2012) (holding that the shipper's tort claims against the broker – Robinson – were expressly preempted by 49 U.S.C. § 14501(c)(1)).

[6] *See Huntington Operating Corp. v. Sybonney Exp., Inc.,* No. CIV.A. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010).

Further, Robinson had had no problems with Imperial Freight and had no part in hiring or supervising the driver. Brokers are not liable for the acts of an independent carrier's drivers.[7] Robinson chose Imperial Freight – not Imperial Freight's driver. Negligence on the driver's part cannot be ascribed to Robinson.[8]

Imperial Freight was a federally-licensed motor carrier authorized by the Federal Motor Carrier Safety Administration. Roberto Vargas – the driver in the crash – was Imperial Freight's employee and held a valid commercial driver's license at the time. When Robinson contracted with Imperial Freight for Toshiba, it confirmed that Imperial Freight maintained adequate insurance and was a federally-licensed motor carrier. No basis – legal or factual – exists for Enbridge's claim that Robinson breached its duty to Enbridge by negligently using Imperial Freight.

*B. No Proximate Cause.*

No evidence appears that an act or omission of Robinson's proximately caused Enbridge's damages. Instead, the record shows that Vargas caused the accident. Vargas testified that he rolled the truck because he miscalculated the curve and exited too quickly. The Arkansas state trooper who investigated the incident agreed that Vargas's miscalculation was the cause of the accident.

Robinson did nothing to cause Enbridge's injury.

5. *Negligent Misrepresentation.*

Enbridge says Robinson negligently misrepresented that Imperial Freight was qualified to carry the cargo. As already mentioned, Robinson vetted and retained a qualified motor carrier that was insured both by the liability and cargo insurance Robinson requires of all motor carriers and the cargo insurance Toshiba specified.

A negligent misrepresentation claim requires Enbridge to show: (1) the defendant made a representation to the plaintiff in the course of the defendant's business; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or

---

[7] *See Hobbs v. Zhao*, No. 13-CV-0673-CVE-FHM, 2015 WL 427819, at *2 (N.D. Okla. Feb. 2, 2015).

[8] *See id.*

communicating the information; (4) the plaintiff justifiably relied on the representation; and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury.[9]

Enbridge has not identified what particular false information Robinson gave it on which it relied, nor shown that Robinson intended to guide Enbridge by misinformation. This court has found that the parties did not contract with Enbridge in mind, so it is not an intended beneficiary of the contract. The negligent misrepresentation legal theory does not apply to this situation. It fails.

6. *Breach of Contract.*

There was no express contract between Enbridge and Robinson, and Enbridge was not an intended beneficiary of Robinson's contract with Toshiba. Accordingly, Enbridge's breach of contract claim fails.

7. *Breach of Fiduciary Duty.*

Robinson owed no fiduciary duty to Enbridge. Robinson was not even contractually obliged to Enbridge. Fiduciary duty is an extraordinary duty well beyond ordinary commercial arrangements, and it certainly does not exist here. Without a fiduciary duty between Robinson and Enbridge, Robinson could not breach it.

8. *Conclusion.*

The accident and resulting loss were without the participation of the independent broker who played no role in it. Enbridge Energy, LP, will take nothing from C.H. Robinson.

Signed on April __25__, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[9] *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).